814 So.2d 1145 (2002)
Michael CACCAVELLA and Jennifer Caccavella, Appellants,
v.
Frederick W. SILVERMAN, M.D., and Robert Topper, M.D., Appellees.
No. 4D01-1289.
District Court of Appeal of Florida, Fourth District.
April 10, 2002.
*1146 Robert Zimmerman and Denise Calegan of Baker & Zimmerman, P.A., Boca Raton, for appellants.
Joseph H. Lang, Jr., and Sylvia H. Walbolt of Carlton Fields, P.A., St. Petersburg, for appellee, Robert Topper, M.D.
STEVENSON, J.
Michael and Jennifer Caccavella filed a medical malpractice action against two physicians, Dr. Frederick W. Silverman and Dr. Robert Topper. Dr. Silverman performed surgery on Mr. Caccavella; subsequently and separately, Dr. Topper treated Mr. Caccavella post-operatively. The Caccavellas settled with Dr. Silverman and signed a release. Following the settlement with Dr. Silverman, the trial court entered final summary judgment in favor of Dr. Topper on the Caccavellas' remaining claim against him. The trial court found that, as a matter of law, Doctors Silverman and Topper were initial/subsequent tortfeasors and that the Caccavellas' failure to expressly reserve any rights against Dr. Topper when they settled with Dr. Silverman was a bar to further pursuit of their claim under Mosley v. American Medical International, Inc., 712 So.2d 1149 (Fla. 4th DCA)(on motion for rehearing), review denied, 719 So.2d 893 (Fla. 1998). We affirm.
In Florida, an initial tortfeasor "may be held responsible for all subsequent injuries including those caused by medical negligence." D'Amario v. Ford Motor Co., 806 So.2d 424, 435 (Fla.2001)(citing among others Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977)). *1147 This rule applies "even where the initial tortfeasor is a physician as well." Letzter v. Cephas, 792 So.2d 481, 485 (Fla. 4th DCA)(citing Davidson v. Gaillard, 584 So.2d 71, 73-74 (Fla. 1st DCA 1991), disapproved on other grounds by Barth v. Khubani, 748 So.2d 260 (Fla.1999)), review granted, 796 So.2d 535 (Fla.2001). When an initial tortfeasor is held liable for the entirety of the plaintiff's damages, his remedy is an action for equitable subrogation against the subsequent tortfeasor. See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla. 1980). As a consequence of this rule of complete liability and the subrogation action that vests in the initial tortfeasor, Florida's courts have required that plaintiffs settling with an initial tortfeasor be specific with respect to the damages that the settlement and release encompass.
In Rucks v. Pushman, 541 So.2d 673 (Fla. 5th DCA 1989), the Fifth District made it clear that if there is any doubt as to whether the settlement and release compensates the plaintiff for all of his injuries or, instead, reserves to the plaintiff the right to pursue the subsequent tortfeasors for their part of the injuries, the doubt will be resolved in favor of the initial tortfeasor.
[I]f the victim's [plaintiff's] settlement agreement with, and release of, the initial tortfeasor does not clearly reserve to the victim the victim's cause of action against the health care providers [subsequent tortfeasors], the legal presumption is that the victim recovered from the initial tortfeasor for the injuries caused by the healthcare providers [subsequent tortfeasors] and the initial tortfeasor will become subrogated to that cause of action and the victim will be thereafter barred from asserting that cause of action against the health care providers [subsequent tortfeasors].
541 So.2d at 676.
In Mosley v. American Medical International, Inc., 712 So.2d 1149 (Fla. 4th DCA)(on motion for rehearing), review denied, 719 So.2d 893 (Fla.1998), this district adopted Ruck's holding. There, Mosley was attacked as he was leaving his place of business. Following the attack, Mosley sought medical treatment. Mosley settled with the owner of the building where he was attacked for $20,000, and, then, filed a negligence suit against the health care providers who had treated him after the assault, alleging that their negligent medical treatment had resulted in paralysis of the peroneal nerve and a drop foot. The health care providers sought the entry of summary judgment, pointing to Mosley's settlement with the building's owner for all "known injuries." The trial court granted the motion, and this court affirmed.
A victim may not ... recover from both the initial tortfeasor and the negligent health care providers for the same injuries. Id. [Rucks v. Pushman, 541 So.2d 673, 675 (Fla. 5th DCA 1989) ].
In McCutcheon v. Hertz Corp., 463 So.2d 1226 (Fla. 4th DCA 1985), this court held that a plaintiff who accepted an offer of judgment from an initial tortfeasor, which included damages for an injury caused by the subsequent negligence of a physician, could not thereafter maintain an action against the physician. This court concluded that the plaintiff was precluded from suing the physician for medical negligence because she had already accepted compensation that provided damages for all of her injuries. Since only one cause of action could be brought against the physician, this court determined that it resided in the initial tortfeasor because of the doctrine *1148 of equitable subrogation adopted by the Supreme Court of Florida in Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla.1980).
712 So.2d at 1151 (emphasis in original).
Here, as in Mosley, the Caccavellas were aware of the full extent of their injuries at the time they settled with Dr. Silverman. And, like Mosley, the Caccavellas settled for all known injuries.[1] To avoid the consequences of their settlement with Dr. Silverman and this court's decision in Mosley, the Caccavellas challenge the trial court's finding that, as a matter of law, Doctors Silverman and Topper were initial/subsequent tortfeasors. Instead, the Caccavellas urge this court to find that the two physicians are joint tortfeasors and, thus, that Mosley has no application or, at the very least, that there is a question of fact regarding the physicians' status as joint tortfeasors, rendering the summary judgment premature and improper.
"Joint tortfeasors are usually defined as two or more negligent entities whose conduct combines to produce a single injury." D'Amario, 806 So.2d at 435 n. 12 (citing Davidow v. Seyfarth, 58 So.2d 865, 868 (Fla.1952)). As this court has recently held, whether defendants are joint tortfeasors is ordinarily a question of fact. See Letzter, 792 So.2d at 486. Nevertheless, when determining the efficacy of a release of one tortfeasor as it applies to other tortfeasors, the trial court must necessarily consider the "facts" to be those alleged in the complaint, in light of the plaintiff's theory of liability. In these circumstances, the plaintiff is in control of the allegations in the complaint, as well as accepting or rejecting the terms of any release entered into with one or several of the tortfeasors involved.
We agree with the trial judge that the facts as alleged in the Caccavellas' complaint demonstrate that Doctors Silverman and Topper are initial and subsequent tortfeasors. The Caccavellas did not sue Doctors Silverman and Topper on the theory that they were joint tortfeasors. Rather, they alleged that Michael Caccavella underwent surgery to repair a right incarcerated femoral hernia. The amended complaint further alleged that Dr. Silverman performed the surgery and, in so doing, he sutured a nerve, immediately causing Caccavella pain and a difficult recovery. With respect to Dr. Topper, the allegations are that he treated Caccavella post-operatively and was negligent for failing to diagnose the cause of Caccavella's immediate and excruciating pain. Simply put, Dr. Silverman acted alone in initially injuring Caccavella by suturing his nerve. Thereafter, any negligence on the part of Dr. Topper could only serve to enhance or aggravate this injury. Consequently, Doctors Silverman and Topper are initial and subsequent tortfeasors, and, in light of Mosley, the trial judge properly entered summary judgment in favor of Dr. Topper following the Caccavellas' settlement with Dr. Silverman.
Having rejected the Caccavellas' invitation to find Doctors Silverman and Topper joint tortfeasors, we now turn to their alternative argument that The Tort Reform and Insurance Act of 1986, chapter 86-160, Laws of Florida, abrogated the rule of Stuart v. Hertz, i.e., that an initial tortfeasor is liable for subsequent medical malpractice, which forms the basis for the *1149 Mosley decision. Section 768.81(3), Florida Statutes (2001), provides in relevant part that "the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." This language serves to curtail application of the doctrine of joint and several liability. The rule of Stuart v. Hertz does not involve joint and several liability; consequently, we decline to find that the statute is sufficiently broad to overrule the supreme court's decision in Stuart v. Hertz. As we articulated in Letzter, however, we recognize that "the underlying premise of holding the initial tortfeasor liable for the subsequent medical malpractice of another party may be at odds with the legislative purposes of chapter 768 which show a preference for making each tortfeasor liable only for his own negligence." 792 So.2d at 488; see also Letzter, 792 So.2d at 488-89 (Klein, J., specially concurring). Consequently, we certify to the supreme court the same questions that we certified in Letzter:
(1) Has the doctrine of Stuart v. Hertz been abrogated by the Tort Reform and Insurance Act of 1986, Chapter 86-160, Laws of Florida?
(2) Does Stuart v. Hertz apply when the initial cause of action is one in medical malpractice and both the initial and subsequent tortfeasors are sued in the same action?
AFFIRMED.
GROSS and HAZOURI, JJ., concur.
NOTES
[1] The release signed by the Caccavellas covered "all actions, claims and demands whatsoever, that now exist or may hereafter at any time accrue against FREDERICK W. SILVERMAN, M.D., Releasee, for any claimed loss, injury and damages to the persons of the Releasors and all consequences flowing therefrom as the result of the alleged acts of FREDERICK W. SILVERMAN, M.D...."